## DETRICK *v.* THE STATE BANK.

It is not incumbent upon a sheriff to levy upon the personal property of the execution-debtor before proceeding to levy upon real estate, if the personal property is so incumbered that it would probably produce nothing upon the execution.

APPEAL from the *Marion* Circuit Court.

*Wednesday, June 13.*

GOOKINS, J.—*Detrick* filed a bill in chancery against the state bank, the object of which was to set aside a levy made by the bank of an execution from the *Marion* Circuit Court, upon a lot owned by the plaintiff, and to enjoin the bank from selling it. A temporary injunction was

allowed, which, on the final hearing, was dissolved, and the bill was dismissed. *Detrick* prosecutes this appeal.

On the 18th of *October*, 1847, the bank obtained a judgment against *John Cain*, in the *Marion* Circuit Court. On the 24th of *April*, 1849, *Cain*, being the owner of the lot in question, conveyed it to one *Lessman*, and through other conveyances the title was transmitted to *Detrick*. The bank sued out an execution on said judgment, *September* 26, 1851, which was levied on the lot, and it was advertised by the sheriff to be sold on the 29th day of *November*. There was then due on the judgment about 450 dollars. The bill states that *Cain*, at the time, had personal property subject to execution, sufficient to satisfy the debt, and gives a schedule of it. It alleges also that the lot, when purchased from *Cain*, was unimproved; that the consideration paid for it was 134 dollars; that lasting and valuable improvements have been made upon it, worth 500 dollars. It prays an injunction to prevent the sale of the lot, and also to prevent the sale of the improvements.

The answer admits the title of *Cain* and the plaintiff's claim to the lot, the judgment, execution and levy; and insists upon the lien of the judgment upon the lot as the property of *Cain*. It states that the sheriff, before levying, demanded property of *Cain*, who refused to turn out any, and declared he had none. It denies that *Cain* had personal property subject to the execution, sufficient to satisfy it. It admits that he had such property, but alleges that it was mortgaged to *W. H. Talbott* to its full value, who was entitled to the possession of it. The situation and value of this personal property form the principal subject of inquiry.

It appears from the evidence, that at the time of the issuing of the execution, *Cain* was the keeper of a hotel in *Indianapolis*, called the "*Capital House*," which had formerly been kept by *Cain* and *Talbott*, as partners, holding the property under a lease from *J. P. Drake*. Their partnership was dissolved on the 13th of *February*, 1851, when *Talbott* sold his interest in the lease and furniture to *Cain*, *Drake* accepting *Cain* as his tenant, and releasing *Talbott*

from the covenants in the lease.   *Cain*, at the same time, executed a mortgage to *Talbott* upon the furniture in the "*Capital House*," to secure the payment of the following notes:   One for 800 dollars, due one year after date; one for 700 dollars, due two years after date; one for 600 dollars, due three years after date; and one for 141 dollars and 93 cents, due three months after date; and also to indemnify *Talbott* against the debts of the partnership, which were to be paid by *Cain*.

*Talbott* testifies that the property mentioned in the mortgage was worth 4,000 dollars; that the amount secured by the mortgage was about 3,300 or 3,400 dollars, exclusive of the rent of the house; that *Cain* failed to pay the partnership debts, and he was called upon by most of the creditors for payment; and that he was sued upon one of them, after *October* 2, 1851, and some were not paid before *January* or *February*, 1852, but *Cain* ultimately paid them all; that on the 1st of *November*, 1851, the rent due on the hotel was about 800 dollars; that the note of 141 dollars and 93 cents, was paid in boarding himself and his family, and persons in his employ, from *May* to *November*, 1851. He stated that if the property had been seized on execution, he would probably have replevied it, and that when seized by *Drake* by virtue of a distress for the rent of the "*Capital House*," he did replevy it, but that an arrangement was made between himself and *Drake* for their joint benefit; and it appeared that the property was formally advertised and sold about the first of *January*, 1852, and was bought by *Drake* for 2,300 dollars, but that an arrangement had been previously made to sell it to *D. D. Sloan*, who was to succeed *Cain* in the hotel, for 4,500 dollars, and the sale to *Drake* was merely to clear the title.

After the filing of the bill and answer, the plaintiff, by a separate amendment, stated that on the 25th of *December*, 1851, he furnished the defendant with a list of the property in *Cain's* possession, including the lease of the house, and requested the defendant to levy upon it, or to permit the plaintiff to have it done at his own risk and

May Term, 1855.

DETRICK
v.
THE STATE
BANK.

expense, which was refused. The furnishing of the list, and the offer to have the execution levied at the plaintiff's risk and expense, were proved. It was also proved that the *Marion* Circuit Court was in session from *December* 8, 1851, to *February* 9, 1852, the object of which was to show that the levy might have been set aside by a motion in that Court.

By the 383d section R. S. 1843, p. 744, the interest of the mortgagor in mortgaged personal property is made subject to execution; and the purchaser succeeds to the rights of the mortgagor in respect to possession and redemption, which leads us to inquire whether *Cain* had an interest in this property that would have been available, had it been taken in execution.

*Talbott* estimates its value at 4,000 dollars. He proves also that it was sold at private sale to *Sloan*, who was to take the "*Capital House*," for 4,500 dollars. It is possible, though highly improbable, that the property, if taken and sold upon execution, all liens upon it having been waived, would have produced that sum. It was sold to *Sloan* in a body, for the use of the hotel, at the instance of *Drake* and *Talbott*, who, by the sale, discharged it of all liens. Had it been seized and sold on execution, it would have been sold subject to the lien of *Talbott's* mortgage. The purchasers would not have obtained possession of the property, because there was a condition in the mortgage, that if at any time *Talbott* should think it important for his security to sell the property, he might take the same into his possession, and proceed to sell it to satisfy the debts and liabilities, whether due or not, which it can not be doubted would have been enforced, had there been an attempt to sell it on execution. Had the property been brought to sale, under these circumstances, we can not think it would have produced the sum of 4,000 dollars.

The liens upon the property are stated by *Talbott* to have amounted to 3,300 or 3,400 dollars, the medium of which is 3,350 dollars, of which none had been paid, so far as the evidence shows, except the note of 141 dollars and 93 cents, due to *Talbott* when the bill was filed. The ap-

pellant assumes that the partnership debts of *Cain* and *Talbott* had been paid, when the execution issued. *Talbott's* is the only testimony on the subject, and it does not sustain that assumption. He states that some of those debts were not paid before *January* or *February*, 1852, but does not fix the date of the payment of any of them.

There was, then, after deducting the small note, 3,200 dollars, besides the rent of the house, for which the property was held at the time of the levy, and *Talbott* testifies that there were 800 dollars of rent in arrear on the 1st of *November*, 1851. The appellant insists that only one year's rent was held by the landlord's lien, which he estimates at 630 dollars. The statute provides that when property is seized by execution, on which any landlord has a lien for rent, the officer shall pay him from the proceeds of the sale the amount so due, not exceeding one year's rent.' R. S. 1843, p. 829, sec. 214. It is true that is the extent of the claim which *Drake* could have enforced; but it was covered by *Talbott's* mortgage. It was a partnership debt, and *Talbott* was not released from the covenants of the lease until the 15th of *February*. The whole amount of 800 dollars must, therefore, be considered an incumbrance, and the amount must be set down at 4,000 dollars.

*Elliott*, a witness for the defendant, testified that he considered the lease of the "*Capital House*" worth 700 dollars above the rent, and says he would have given that amount for it. *Talbott* testified that he thought it worth nothing. *Elliott* was a hotel keeper, and *Talbott* had been one under this lease. He had, at least, equal opportunities of knowing its value, and we can not say that there is any preponderance of evidence as to this item in favor of the appellant. The statement of what one would or would not give for property, although it doubtless influences his opinion in regard to its value, furnishes a very uncertain criterion, and is not strictly admissible as a rule of evidence. Every one's private circumstances and wants influence him in respect to what he might be induced to give or withhold for certain property. Mr. *Elliott*, with a view to keeping a hotel, might have been willing to give 700

dollars for this lease, but nobody knew that, until his deposition was taken, long afterwards, so far as appears. No weight can, therefore, be given to that circumstance. Considering the situation of this property, even had it been sold on execution, we do not think *Cain* is shown to have had an interest in it that would have been of any value. But there is no probability that it would have been sold, had it been seized. The claims of *Talbott* and *Drake* upon it would, without doubt, have been interposed to prevent a sale, had it been levied upon. Nor is it shown that the plaintiff has lost anything by the refusal of the bank to give him the control of the execution. It is therefore unnecessary to consider, whether he was bound to tender an indemnity before he could claim the control of process which would certainly have involved the party in litigation. Such is the usual course.

The question discussed by the parties is, whether the bank should not have been enjoined from selling the improvements upon the lot. That question does not arise in this record. The levy sought to be enjoined was upon the lot. These improvements were made by the grantees of *Cain*, with constructive notice, at least, of the lien of the judgment, and if they remain there until the lot is sold, it will be a question between *Detrick* and the purchaser, as to their respective rights, which we will not anticipate.

*Per Curiam.*—The decree is affirmed with costs.

*J. L. Ketcham*, for the appellant.

*O. H. Smith* and *S. Yandes*, for the appellee.